## In re SURF ADVERTISING CORPORATION.

District Court, S. D. New York.

Dec. 30, 1941.

David Haar, of New York City, for trustee.

Samuel Greenberg, of New York City, petitioner in person.

LEIBELL, District Judge.

Samuel Greenberg, an attorney, has filed a petition in this Chapter X proceeding (Bankr.Act, 11 U.S.C.A. § 501 et seq.) asking that the Court determine the amount due him on his alleged secured claim and that the trustee be directed to turn over to him part of the proceeds of the sale of certain display signs or advertising boards. Petitioner claims that these boards were subject to a certain chattel mortgage in the sum of $6,000 alleged to have been executed by the debtor in favor of the petitioner on September 29, 1939.

The advertising boards were located in several states. Petitioner filed the chattel mortgage in New York, Bronx and Queens Counties, State of New York, on October 3, 1939; in Essex, Bergen and Hudson Counties, State of New Jersey on October 5, 1939; in a county in Connecticut October 5, 1939; and in Mercer County, State of New Jersey on October 10, 1939. The indebtedness allegedly secured by the said chattel mortgage consisted of (1) certain notes of the debtor totalling $2,013.87 representing in part money loaned by the petitioner to the debtor and partly notes of the debtor issued to the Siegel Advertising Company, purchased by the petitioner; (2) a note dated September 29, 1939, for $986.13 for services rendered by petitioner as attorney for the debtor in certain law suits; (3) a note for $3,000 dated September 29, 1939, for services rendered by petitioner in connection with a certain claim of Planters Nut & Chocolate Company in the sum of $6,000. These two last mentioned notes are described in Exhibit 1, a letter from the debtor to Samuel Greenberg, dated September 29, 1939.

Petitioner, according to the said letter of September 29th, is alleged to have saved the debtor from paying the said sum of $6,000 to the Planters Nut & Chocolate Company and, under an alleged retainer arrangement was to receive one-half of the amount saved, to wit, $3,000. While I believe that the amount due the petitioner was arbitrarily increased by the addition of this $3,000 and the $986.13 in order to bring the total allegedly due the petitioner to the round sum figure of $6,000, in disposing of petitioner's application, on the grounds hereinafter stated, it will be unnecessary to consider the value of the services for which these two notes were given. At the hearing before me on the issues raised by the petition and the answer of the trustee, paragraph "7" of the trustee's answer was amended so as to add thereto allegations to the effect that the chattel mortgage was voidable as a preferential transfer under Section 60, sub. a, of the Bankruptcy Act and also that it was invalid under Section

15 of the New York Stock Corporation Law, Consol.Laws, c. 59. I have concluded that the chattel mortgage given to the petitioner September 29, 1939, constituted a preference under Section 60, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a, and that the preference should be avoided, § 60, sub. b, as prayed for in the answer and counterclaim of the trustee herein.

The resolution of the Board of Directors of debtor, passed at the meeting of September 29, 1939, at which Samuel L. Schub and his sister, Rose Schub, the two sole directors of the corporation were present, is Exhibit 2. It states that it was "to the best interests" of the debtor corporation to give Mr. Greenberg a chattel mortgage in the sum of $6,000 "as security for monies loaned by him to the Surf Advertising Corp., and for professional services rendered by him to the Surf Advertising Corp., as evidenced by promissory notes made by the Surf Advertising Corp. to the order of said Samuel Greenberg." A second paragraph of the resolution recited that "in order to induce the said Samuel Greenberg to extend the time of the payments of the aforementioned promissory notes and to continue rendering professional services to the Surf Advertising Corp." the officers were authorized and empowered to execute such agreements, documents, chattel mortgages and assignments which might be required to secure the payment of the aforementioned sum of $6,000.

On October 2, 1939, Samuel Schub and Rose Schub resigned as officers and directors of the corporation and Samuel Schub is alleged to have assigned to the petitioner Greenberg all of the shares of stock of the corporation, to wit, 250 shares on that date. On the morning of October 3rd Samuel Schub was found dead in the basement of his home in Brooklyn having committed suicide. The petitioner Greenberg says that he did not learn of Schub's death until about six o'clock in the evening of October 3rd. During that day he recorded the chattel mortgage in Bronx, New York and Queens counties and had also filed with the bank in which the corporation had an account a resolution to the effect that he, Greenberg, was president and one Marks, a salesman for the corporation, was secretary.

Petitioner testified that on October 2, 1939, when he received from Samuel Schub all of the corporation's stock, petitioner signed a letter addressed to Mrs. Ethel Schub, the wife of Samuel Schub, and gave the letter to Samuel Schub for the said Ethel Schub. The trustee has a carbon of the letter, furnished by the petitioner. The original has not been produced. Because of its importance I quote the letter in full:

"October 3, 1939

"Mrs. Ethel Schub,
  "3102 Avenue L,
  "Brooklyn, N. Y.

"Dear Madam:

"This is to inform you that in the event I am successful in adjusting with the creditors of the Surf Advertising Corp. their claims and Surf Advertising Corp. will be able to continue operating as a going business, I will transfer and assign to you the two hundred and fifty (250) shares of the common stock of the company now in my name.

"I agree, that in the event I am successful in collecting the $6,000.00 due me on the chattel mortgage executed on September 29th, 1939, by the Surf Advertising Corp., I will give you $2000.00 of said amount.

"I hereby further agree, that in the event I am successful in obtaining the management of the Surf Advertising Corp. with the consent of the ~~stock holders~~ creditors and will receive more than $50.-00 per week, for my services, I will give you the surplus each and every week.

  "Yours very truly,"

The letter bears date October 3, 1939. Petitioner says that the date is a mistake and that is should have been dated October 2, 1939. Even if we assume that the latter is the correct date, that does not help petitioner any. The letter itself clearly indicates the fraudulent character and purpose of the chattel mortgage of $6,000.

At the time the petitioner received the chattel mortgage he knew there were certain suits pending against the debtor in the Municipal Court and the City Court against which the debtor had no defense. Petitioner testified that he wanted to protect the corporation; that if Schub should die suddenly some of the creditors might come in and get the assets; that the certificate of stock was transferred to petitioner to enable him to continue the business for himself and the widow; that it was to enable petitioner to deal with creditors, to arrange with creditors some sort of settlement; that when he received the $6,000 chattel mortgage he knew that all the contracts with customers, and the amounts

payable thereunder, had been assigned to a money-lender named Abrams. The only assets not assigned, the physical property, the advertising boards, plus the leases of the property on which they were erected and the licenses for their operation, were the subject of the chattel mortgage of $6,000 to the petitioner.

At the time petitioner received the chattel mortgage he knew that the corporation owed at least $54,150 to creditors. Exhibit D-1 is a photostat of a memorandum in the handwriting of Samuel Schub listing ten creditors whose claims totalled the said sum of $54,150. This memorandum, Exhibit D-1, petitioner gave to Mr. Max E. Sanders at a meeting of creditors on October 16, 1939. At the hearing before me the petitioner stated that he did not recall having given Mr. Sanders the slip of paper and suggested that some creditor may have given it to Mr. Sanders. But in his brief petitioner says that he may have done so. Mr. Sanders testified that Mr. Greenberg told Mr. Sanders on October 16, 1939, that this slip of paper had been handed to him, Greenberg, shortly before Mr. Schub died and that it represented the bulk of the liabilities of the debtor. I believe Mr. Sanders.

The testimony indicates that the petitioner Greenberg had an intimate knowledge of the debtor's affairs. He had loaned it money. He had acted as its attorney and he was Mr. Schub's personal adviser. He spent a good part of Friday, September 29, 1939, and all of Monday, October 2, 1939, in conference with Mr. Schub, president of the debtor, at the debtor's office. Petitioner's explanation of all that Schub did on September 29th and October 2nd is that Schub stated that he was in poor health and that the doctor had told him that he needed a rest. Miss Rose Schub, the sister of Samuel Schub, took care of the books of account of the debtor corporation. She resigned as a director of the corporation on October 2nd and also quit her job as bookkeeper. She also is supposed to have been ill. Apparently Schub was in a bad way financially and had become deeply involved in his dealing with his creditors. I do not believe the statement of the petitioner that he did not know that the debtor was insolvent on September 29, 1939.

The session which petitioner had with Mr. Schub on October 2, 1939, was a long one. When it ended petitioner not only had the aforementioned chattel mortgage, but also had a stock certificate for all of the capital stock of the debtor, assigned to him by Mr. Schub. Further, all of the officers and directors resigned, that is to say, Samuel Schub and his sister, Rose Schub. Greenberg then hired his own niece to come in the following day, October 3rd, to act as bookkeeper. After the death of Schub, Greenberg made himself president of the company and made Marks the secretary. He paid himself a salary of $50 a week. On October 7, 1939, he paid himself a $100 note of the debtor, which he held.

Petitioner made a deal with Mr. Abrams on October 11, 1939, by which petitioner was to continue as President at a salary of $50 a week and agreed to turn over the books of the corporation to Abrams. The instrument effecting the deal (Exhibit 23) took care of Abrams and Greenberg, but shut out the other creditors. The opening paragraph reads as follows: "We wish to inform you that we are now the sole officers, directors and stockholders of Surf Advertising Corporation, and that we are in full charge and management of the affairs of that corporation. We know that all the contracts of that corporation covering the various signs and bulletin boards have been assigned to you as security for the payment of advances made by you, and your charges, etc., and we know that by reason of these assignments all payments to be made on any and all contracts now existing or any renewals thereof are to be turned over to you in the identical form as received."

The instrument, Exhibit 23 (a letter dated October 11th, 1939), also contained the following statements:

"The undersigned, Samuel Greenberg, hereby agrees that he will not take any steps of any kind to enforce payment of any notes held by him and made by the said corporation, or of any indebtedness due him from the said corporation and will not take any steps to enforce any chattel mortgages made by the said corporation to him covering various boards, signs and bulletins, etc., and will not in any wise interfere with your rights to have the said signs maintained and serviced until and after you have been fully paid for any and all monies due or to become due to you from the said corporation."

"We further agree and recognize that the indebtedness due from the said corporation to you, as of this date is $14,500."

Petitioner received $50 a week from the corporation with the approval of Abrams until November 18th, when the amount was reduced to $30 a week until December 7, 1939, the date the petition under Chapter X was filed in this Court. The trustee herein was appointed December 26, 1939.

The chattel mortgage for $6,000, dated September 29, 1939, from the debtor to petitioner, Samuel Greenberg, was a preferential transfer of assets of the debtor within the provisions of the first sentence of Section 60, subdivision a, of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a: "a. A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition in bankruptcy, or of the original petition under chapter 10, 11, 12, or 13 of this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."

This preferential transfer may be "avoided" by the trustee and the trustee is entitled to retain all the proceeds of the sale of the mortgaged chattels under the provisions of Section 60, subdivision b of the Act: "b. Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. Where the preference is voidable, the trustee may recover the property or, if it has been converted, its value from any person who has received or converted such property, except a bona-fide purchaser from or lienor of the debtor's transferee for a present fair equivalent value: * * *."

Petitioner, not only had reasonable grounds to believe that the debtor was insolvent on September 29, 1939, but actually knew debtor was insolvent on that date. I do not believe his denial of such knowledge. His own conduct and the documentary evidence clearly establish it. New York Credit Men's Ass'n v. Chaityn, D.C., 29 F.Supp. 652.

Petitioner's motion is denied and the trustee's counterclaim is sustained and petitioner is directed to return to the trustee the sum of $100 which petitioner paid to himself on October 7, 1939, out of the assets of the debtor, in satisfaction of a note of the debtor held by the petitioner.

Submit order on notice.